IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. TDC-19-290 |
| | * | |
| MARQUIS VON CLEMONS, | * | |
| | * | |
| Defendant. | * | |
| | * | |

*******

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorneys, hereby submits the Government's Memorandum in Aid of Sentencing of Marquis von Clemons, who is scheduled to be sentenced on September 11, 2020. For the reasons set forth below, the Government submits that a sentence of **115 months in prison, followed by 3 years of supervised release,** is a sentence sufficient but not greater than necessary to satisfy the goals of sentencing.

### Background

On June 3, 2019, the Defendant Marquis von Clemons ("Clemons") appeared in this Court for an initial appearance based on a criminal complaint. Clemons was subsequently indicted on June 12, 2019, on one count of Bank Robbery, in violation of 18 U.S.C. § 2113(a), and one count of Attempted Bank Robbery, in violation of 18 U.S.C. § 2113(a). Clemons was arraigned on July 8, 2019.

Pursuant to a written plea agreement entered on October 28, 2019, the Defendant pled guilty to Count One of the Indictment. (ECF No. 30 ("Plea").) After accepting the Defendant's

1

plea to Count One and adjudging him guilty, the Court scheduled sentencing for February 4, 2020,[1] and directed the U.S. Probation Office ("Probation") to prepare the Pre-Sentence Investigation Report ("PSR"), which was filed on December 30, 2019.  (ECF No. 33 ("PSR").)

In the Plea Agreement, the parties agreed that the offense level was **26**.  The Government did not oppose a **2**-level reduction for acceptance of responsibility, and the Government agreed to move for an additional **1**-level reduction in recognition of the Defendant's timely notification of his intention to enter a plea of guilty.  (Plea ¶ 6(j)).  Accordingly, the final offense level is **23**.  Probation's calculation of the offense level is in line with the plea agreement.  (PSR ¶¶ 16-39.)  The parties did not reach agreement as to the Defendant's criminal history.  The Government agrees with Probation's calculation of the Defendant's criminal history score of **13** and criminal history category of **VI**.[2]

## Legal Standard

In *United States v. Green,* 436 F.3d 449 (4th Cir. 2006), the Fourth Circuit held that after *United States v. Booker,* 543 U.S. 220 (2005), which made the United States Sentencing Guidelines ("Sentencing Guidelines") effectively advisory, the district court is commanded to fulfill congressionally established objectives for sentencing set out in 18 U.S.C. § 3553(a): promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the

---

[1] Following a consent motion by the Defendant to reschedule sentencing, (ECF No. 34), the Court postponed sentencing to April 17, 2020, (ECF No. 35).  Due to COVID-19, sentencing was postponed and rescheduled for September 11, 2020.  (ECF No. 37.)

[2] The Defendant objected to the criminal history point assigned to the Defendant's conviction for possession of marijuana in Prince George's County in 2009.  As noted in the PSR, the Defendant withdrew his "Not Guilty" plea and entered a plea of "Nolo Contendere."  (PSR at 23.)  Pursuant to United States Sentencing Guideline § 4A1.2(a)(1) a plea of *nolo contendere* is considered a "prior sentence" under the Guidelines.

defendant training, medical care, and correctional treatment; and providing restitution to victims. *See Green,* 436 F.3d at 455; *see also United States v. Moreland,* 437 F.3d 424, 432 (4th Cir. 2006).

Thus, in conducting a sentencing, district courts must (1) calculate the sentence range recommended by the Sentencing Guidelines; (2) determine whether a sentence within that range and within statutory limits serves the statutory sentencing factors set out in 18 U.S.C. § 3553(a) and, if not, select a sentence that does serve those factors; (3) implement mandatory statutory limitations; and (4) articulate the reasons for selecting the particular sentence, especially explaining why a sentence outside of the Sentencing Guideline range better serves the relevant statutory sentencing purposes.  *See Green,* 436 F.3d at 455-56; *Moreland,* 437 F.3d at 432.  The explanation of a variance sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary.  *See Green,* 436 F.3d at 455-56; *United States v. Perez-Pena,* 453 F.3d 236, 241 (4th Cir. 2006).  The district court is given "some latitude," and "a degree of deference," to tailor a particular sentence to the circumstances.  *Green,* 436 F.3d at 456-57; *Moreland,* 437 F.3d 433.

**18 U.S.C. § 3553(a)(1) – History and Characteristics of the Defendant**

Starting with the history and characteristics of the Defendant, the Defendant has an extensive criminal history that dates back over 20 years.  While the Defendant's convictions run the gamut from drugs to robbery/theft, it is the latter category that the Government wants to focus on as most relevant to the instant offenses.

Starting at the age of 16, the Defendant was convicted for Robbery in Prince George's County.  (PSR ¶ 43.)  The facts of the case show the Defendant's willingness to participate in armed robberies from an early age.  The Defendant (accompanied by a co-defendant), firearm in

hand, pointed the handgun at the victim and demanded money. (*Id.*) After the victim escaped and called the police, when officers approached the Defendant, they saw the Defendant take out and throw a handgun from his waistband. For this, the Defendant was sentenced to 5 years imprisonment, all but one year suspended, and 3 years supervised probation. (*Id.*) After release, the Defendant violated probation and was sentenced to another 5 years, all but 3 years suspended, and 3 years supervised probation. (*Id.*)

Following this first violent incident, the Defendant had a string of run-ins with the law, including three drug-related convictions in 2004, 2006, and 2007. (PSR ¶¶ 44-46.) Then, in 2010, the Defendant was arrested for Second Degree Burglary/Theft in Prince George's County. (*Id.* ¶ 47.) The Defendant was charged with breaking into laundry machines. In this instance, when the Defendant saw the police, he attempted to flee, before he was eventually detained. (*Id.*) After pleading guilty, the Defendant was sentenced to 10 years, all but 18 months suspended, and 2 years probation. (*Id.*) After his release from prison, the Defendant continued to have run-ins with the law (including for trespass, indecent exposure, and disorderly conduct, *see id.* ¶¶ 48-50), carrying out his next robbery in 2015.

On October 14, 2015, the police were called to a SunTrust Bank branch located in Hyattsville, Maryland. (PSR ¶ 51.) Mirroring the facts of this case, the victim teller was approached by the Defendant who handed her a note demanding bank funds, or threatening to shoot her. (*Id.*) Fearing for her life, the teller gave the Defendant $1,550, and the Defendant fled. The Defendant was arrested and charged for this crime the next day. (*Id.*) On July 1, 2016, after pleading guilty, the Defendant was sentenced to 15 years imprisonment, all but 4 suspended, and 5 years probation. The Defendant was released from prison on July 2, 2018. (*Id.*)

4

In less than a year, while on probation, and four years after he first robbed it, the Defendant once again entered the same SunTrust Bank branch with a note in hand demanding money from a teller. (Plea at 10.) On February 13, 2019, the Defendant entered the bank and passed a note to the teller stating, "I have a gun, do not say anything." (*Id.*) In fear for her safety, the bank teller complied and gave the Defendant approximately $5,080 from the teller drawer. (*Id.*) The Defendant proceeded to flee the bank on foot, before he could be apprehended. (*Id.*) In leaving the bank, the Defendant discarded a number of items, which were later traced back to the Defendant. (*Id.* at 10-11.)

A week later, on February 19, 2019, the Defendant attempted to rob the same bank—a third time. (Plea at 10.) In that week, the bank had hired a security guard. When the security guard saw the Defendant enter the bank with a mask, the guard asked the Defendant to remove his mask. (*Id.*) The Defendant failed to comply and instead attempted to reach into his pockets. Believing that the Defendant was about to rob the bank and fearing for his life, the security guard engaged in a physical altercation with the Defendant, eventually proceeding to detain the Defendant until law enforcement arrived. (*Id.*) When they arrived, law enforcement searched the Defendant and found a note in his pocket. The note stated that the Defendant had a gun and demanded money. (*Id.*) When asked for his personal identifiers, the Defendant gave a fake name and social security number.

The Defendant has demonstrated a willingness to use firearms, threats of firearms, violence, and threats of violence in order to effect his robberies—either against individual victims or the employees of companies the Defendant robs. Such violence and threats of violence are particularly dangerous where members of the public are present, as evidenced by the physical altercation between the Defendant and the bank's security guard during the third robbery. The

5

Defendant has the highest criminal history category available under the Sentencing Guidelines, and a review of the Defendant's lengthy criminal history shows that such a high criminal history category is warranted and emblematic of the defendant's disrespect for the law and danger to the community.

### 18 U.S.C. § 3553(a)(2) – Necessity for the Proposed Sentence

A sentence of 115 months of imprisonment—as recommended by Probation—followed by 3 years of supervised release is sufficient but not greater than necessary to meet the purposes of sentencing as enumerated in § 3553(a)(2).

As evidenced by the previous section, the Defendant's criminal activities are serious. These actions demonstrate a clear disrespect for the law, as not only has the Defendant continued to repeatedly violate the law, but the Defendant has engaged over-and-over in the same behavior—thefts and robberies—that finds him before this Court now. In robbing and attempting to rob the SunTrust Bank branch in 2019, the Defendant employed threats and violence—a tact he has used since the age of 16—making his victims fear for their lives in order to get what he wants. A sentence of 115 months of imprisonment reflects the seriousness of the offense.

After robbing the SunTrust Bank branch in 2015, the Defendant received his longest term of imprisonment to date—notwithstanding that the court gave the Defendant a substantial break by suspending most of the 15 year sentence. Nonetheless, the Defendant chose—less than a year after his release from prison and while on supervised probation—to once again engage in the very same conduct—twice. Each time, the Defendant used the threat of violence to make his victims fear for their lives in order to obtain their compliance, so that they would provide him with money. A lengthy prison sentence is the only way to ensure that the purposes of deterrence and respect for the law are met—so that the Defendant hopefully does not engage in this conduct again. In light

of the year the Defendant has spent in detention pending resolution of this case, as well as the likelihood that the Defendant will serve approximately 85% of the sentence imposed on him by this Court, a sentence of 115 months will likely result in seven additional years in prison. Following a 115 months sentence, the Defendant will be around 44 years old, which based on the United States Sentencing Commission's study of the effects of aging on recidivism, will hopefully mean that the Defendant will be less likely to re-offend and thus better protecting the public from future crimes of the Defendant.  *See* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

That the Defendant may also potentially face significant time from his 2015 state conviction when he first robbed the Sun Trust Bank branch does not bear on the sentence that this Court must now impose on him.  As previously noted, the Defendant was on supervised probation for his 2015 state conviction (where he was sentenced to 15 years imprisonment, all but 4 suspended, and 5 years probation) when he committed the instant offenses.  When the Defendant chose to rob the same bank for a second and third time—once more choosing to terrorize its employees—he did so knowing that he had only just been released from serving a portion of his full sentence and that he was on supervised probation, violating which could lead to an additional term in prison in his state case.  Now that the Defendant has yet again engaged in the same recidivist conduct, any pleas for leniency due to the fact that he may face prison time for his state violation of probation ring hollow.  A sentence of 115 months—as recommended by Probation—is necessary to show the Defendant (a) the seriousness of his conduct, and (b) that he will face serious consequences for his decisions to violate the law.  In addition, the Government hopes that a relatively lengthy sentence of nine-and-a-half years, followed by the statutory maximum of three

7

years of supervised release, will serve as an adequate deterrence and protect the public from future crimes of the Defendant.

## Forfeiture Judgment and Restitution

The Government asks the Court to incorporate the motion for forfeiture money judgment and accompanying order, filed on April 8, 2020, (ECF No. 36), into the sentencing proceeding as well as order restitution in the amount of $5,080—the amount that the Defendant has admitted he stole from the SunTrust Bank branch on February 13, 2019.

## Conclusion

For the foregoing reasons, and additional information that may be presented at the sentencing hearing, the Government respectfully submits that a sentence of 115 months, followed by 3 years of supervised release, is sufficient but not greater than necessary to meet the purposes of sentencing as enumerated in the § 3553(a) factors.

Respectfully submitted,

Robert K. Hur
United States Attorney

By:   /s/
Rajeev R. Raghavan
Dana J. Brusca
Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was filed electronically on August 28, 2020, and thus served upon defense counsel.

/s/
Rajeev R. Raghavan
Assistant United States Attorney